IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE FOURKILLER,<br><br>Defendant. | Case No. 23-CR-106-JFH |

**OPINION AND ORDER**

Before the Court is a notice of intent to admit evidence of other child molestation ("Notice") filed by the United States of America ("Government") [Dkt. No. 50] and a response and objection to the Notice ("Objection") filed by Defendant Lawrence Fourkiller ("Defendant") [Dkt. No. 56]. For the reasons stated, the evidence described in the Notice is ADMISSIBLE.

**BACKGROUND**

Defendant is charged with 10 crimes: two counts of aggravated sexual abuse of a child under 12 and eight counts of abusive sexual contact with a child under 12. Dkt. No. 33. Each charge involves a different victim. *Id.* The aggravated sexual abuse counts allege that Defendant used his finger to penetrate Victim 1's genital opening and used his penis to penetrate Victim 2's mouth. *Id.* at 1-2. The abusive sexual contact counts allege that Defendant touched victims' inner thighs, genitals, buttocks, and breasts "directly and through the clothing." *Id.*

The Notice provides additional factual detail to the allegations. Dkt. No. 50. Defendant was employed as a teacher at Stilwell Elementary School, where he taught second and fourth grades. All 10 alleged victims were students in his classes during recent school years. Victims 4, 5, and 6 were Defendant's students in the 2019-2020 school year; Victims 1, 2, and 3 in the 2020-2021 school year; and Victims 7, 8, 9, and 10 in the 2022-2023 school year. *Id.* This Order does

not summarize all allegations described in the Notice, and instead highlights only a few instances most relevant to the Court's analysis.

Victim 1 described that Defendant put his finger in her "private spot" where girls pee. *Id.* at 6. She reported that it really hurt when Defendant put his finger there, she noticed blood when she peed afterward, and she had to go to the hospital because her "private spot" burned. *Id.* Victim 1 also described Defendant touching himself while he touched her, including moving his hand up and down in his pants. *Id.*

Victim 9 told investigators that Defendant told her he "had explored" with his cousin and touched his cousin's "kitty." *Id.* at 4. He told Victim 9 that he and his cousin had "so much fun" doing this. *Id.*

Victims 8 and 9 described Defendant holding girls back from recess, theoretically to finish homework but actually so he could touch them. *Id.* at 3-4. Victim 2 described that Defendant, who was her second-grade teacher, held her back from group activities such as PE so that he could make her suck on his penis, which he called a "squishy marker" with "milk" that he would make her drink. *Id.* at 2. Victim 1 reported that when she refused to sit on Defendant's lap, he issued her an in-school detention. *Id.* at 6. Victim 5 described that Defendant made female students come hug him before he would allow them to leave the classroom to go to the restroom. *Id.* at 7.

The Notice then describes two additional alleged victims—both cousins of Defendant—who reported sexual abuse by Defendant. Dkt. No. 50. Victim 11 is an adult female who reported that when she was seven or eight years old and Defendant was 14 or 15 years old, Defendant put his hand under her underwear and touched her vulva on approximately three occasions. *Id.* at 8. On one of these occasions, he penetrated her vagina with his finger, and the next morning, Victim 11 noticed a small amount of blood in her underwear. *Id.*

Victim 12 is an adult male who made social media posts describing past sexual abuse by Defendant. *Id.* During an interview with law enforcement, Victim 12 reported that when he was approximately eight or nine years old and Defendant was 15 or 16 years old, Defendant "would tell Victim 12 that he would not let him continue to play video games until he touched his penis." *Id.* at 9. They would then "give each other hand jobs at the same time." *Id.* Victim 12 could not remember whether Defendant made him perform oral sex on Defendant, but Victim 12 remembered having a bad taste in his mouth following these encounters. *Id.*

## AUTHORITY AND ANALYSIS

The Federal Rules of Evidence generally prohibit "the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (citing Fed. R. Evid. 404(a)). However, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). "Rule 414(a) contains identical language related to accusations of child molestation." *Benally*, 500 F.3d at 1090. Because the language and standards are identical, the Court adopts the Tenth Circuit's convention of referencing evidence offered under either of these provisions as "Rule 413/414 evidence." *See id.*

> Rule 413/414 evidence
>
> > must meet three threshold requirements before it may be considered for admission . . .
> >
> > (1) the defendant is accused of a crime involving sexual assault or child molestation;
> >
> > (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation; and
> >
> > (3) the evidence is relevant.

3

*Id.* Once evidence meets this threshold, "a district court must recognize the congressional judgment that Rule [413/414] evidence is normally to be admitted." *United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1988). However, the evidence is still "subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice." *Benally*, 500 F.3d at 1090 (internal quotation marks and citation omitted); *see* Fed. R. Evid. 403. Thus, before allowing admission, a district court must "fully evaluate the proffered evidence [under Rule 403] and make a clear record of the reasoning behind its findings." *Benally*, 500 F.3d at 1091 (quotation omitted).

## I. Threshold (*Benally*) Factors

Admission under Rule 413/414 requires a defendant be accused of a crime involving sexual assault or child molestation. For purposes of Rules 413 & 414, sexual assault is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A" and child molestation is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child [under the age of 14]." Fed. R. Evid. 413(d)(1); Fed. R. Evid. 414(d)(1)-(2). Here, Defendant is charged with 10 counts of conduct prohibited by various statutes found within 18 U.S.C. chapter 109A [*see* Dkt. No. 33], so this is fulfilled. *Benally* next requires that the proffered evidence involves other sexual assault or child molestation. The alleged conduct described by Victims 11 and 12 is also prohibited by the statutes within 18 U.S.C. chapter 109A, so this is also fulfilled.[1]

---

[1] Defendant asserts that the acts described in the Notice are not "crimes" because they allegedly occurred when he was a minor himself. Dkt. No. 56 at 3-4. The Court examined and rejected a very similar argument in *United States v. Cole*, Case No. 22-CR-98-JFH, 2022 WL 17987066 (E.D. Okla. Dec. 29, 2022). The Court adopts the *Cole* analysis here and rejects Defendant's argument that his minority at the time of the alleged prior acts bars admission under Rule 413/414. However, the Court will consider Defendant's age at the time of the alleged prior acts when it weighs the probative value and prejudicial dangers of the evidence.

*Benally* also requires the proffered evidence be relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence." Fed. R. Evid. 401. Relevance of Rule 413/414 evidence is explained by its legislative history, which relied "on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes." *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also* 23 Charles Alan Wright et al., *Fed. Prac. & Proc. Evid.* § 5385 (April 2020 update) ("The legislative history makes clear that the drafters and Congress believed that evidence under Rules 413, 414, and 415 is relevant to prove propensity and that this includes the defendant's propensity to commit sexual assault or child molestation."). This is sufficient to satisfy the Court. The *Benally* threshold is satisfied. The Court next turns to Rule 403.

**II.    Rule 403 (*Enjady*) Factors**

   **A. Standard**

To assess Rule 403's requirements in the context of Rule 413/414 evidence, courts weigh: "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence," against "1) how likely [it is] such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct." *Enjady*, 134 F.3d at 1433. No single factor of the *Enjady* test is dispositive. *United States v. Mann*, 193 F.3d 1172, 1175 (10th Cir. 1999).

### B. Probative Value Analysis

#### 1. How clearly the prior acts have been proven

Initially, the Court must "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Benally*, 500 F.3d at 1090. Similar acts "must be established by sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Enjady*, 134 F.3d at 1433 (quotation omitted). Non-exhaustive examples of sufficient evidence include police reports, transcribed phone calls, Facebook conversations, interviews of witnesses, FBI 302 interview reports, other written materials such as victim deposition transcripts, and judicial records demonstrating that prior acts of child molestation resulted in guilty pleas and convictions. *See United States v. Nieto Regalado*, No. 19-CR-114, 2019 WL 5783730, at *2 (N.D. Okla. Nov. 6, 2019); *United States v. Perrault*, No. 17-2558, 2019 WL 1332584, at *2 (D.N.M. Mar. 25, 2019); *United States v. Vafeades*, No. 14-CR-153, 2015 WL 9273936, at *4 (D. Utah. Dec. 18, 2015).

Here, the Government submitted redacted copies FBI 302 interview reports with both Victim 11 and Victim 12, as well as an audio recording of an interview with Victim 12. Dkt. No. 50-1; Dkt. No. 50-2; Dkt. No. 50-3.[2] Additionally, Victim 9 allegedly describes Defendant telling her he had fun playing with his cousin's "kitty," which cross-corroborates Victim 11's report of digital vaginal penetration. This is sufficient to preliminarily find that a jury could reasonably find by a preponderance of the evidence that the acts described by Victim 11 and Victim 12 occurred.[3]

---

[2] The Government also submitted screenshots of Facebook posts purportedly made by Victim 12. Dkt. No. 50-2 at 3-5. Defendant does not contest authentication, but the Court gives these social media posts less weight than the investigative evidence submitted.

[3] Defendant argues that the acts have not been proven by a preponderance of the evidence because they allegedly occurred approximately 29 years ago and were not reported until after July 2023. Dkt. No. 56 at 5. A similar argument was raised and rejected in *Cole*. 2022 WL 17987066 at *9.

### 2. Factors demonstrating probative value

To fully assess the probative value of Rule 413/414 evidence, courts must consider five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Batton*, 602 F.3d at 1198.

The prior and charged acts share marked similarities. All alleged victims were in the age range of seven to 10 years old. Charged Victim 1 and Rule 413/414 Victim 11 both describe pain and bleeding from Defendant digitally penetrating their vaginas. Victim 2 describes being made to drink "milk" that came from Defendant's penis, while Victim 12 describes a bad taste in his mouth after he was alone with Defendant. Numerous charged victims describe Defendant using his authority role as their teacher to isolate them and abuse them. Victim 12 likewise describes Defendant using his authority role as his babysitter to isolate him and abuse him. The similarity in acts weighs toward probative value.[4]

There is a substantial time lapse between the alleged prior acts and the charged conduct. However, "similarity of prior acts to the charged offense may outweigh concerns of remoteness in

---

[4] Defendant claims the prior acts are not similar to the charged acts because "juveniles sexually exploring at home is a far cry from an adult touching a juvenile in a public setting." Dkt. No. 56 at 6. Again, the Court considered and rejected a similar argument in *Cole*. 2022 WL 17987066 at *9 ("The described behavior goes far beyond anatomical exploration and falls squarely within the realm of sexual gratification. The methods Defendant allegedly used to derive sexual gratification are similar across both the charged victims and the 414 victims."). Defendant also argues that Victim 12's male gender is not similar to the charged victims' female gender. While this is certainly a difference, it is not so material to overcome the similarities between allegations, including the ages of the charged victims and Victim 12 being all clearly below the age of legal consent, the bad taste Victim 12 described being similar to Victim 2's description of being made to drink Defendant's semen, and Defendant's abuse of an authority position as a teacher or babysitter to act on his sexual urges with the minors in his charge.

time." *Batton*, 602 F.3d at 1199 (quoting *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997)). Thus, "Rule 413/414 evidence is not subject to exclusion for staleness." *Cole*, 2022 WL 17987066 at *9. "No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, *evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time* in relation to the charged offense or offenses." *Meacham*, 115 F.3d at 1492 (emphasis added) (quoting Fed. R. Evid. 413 Historical Notes (quoting 140 Cong. Rec. H8991–92 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari))). The time lapse between prior and charged acts is neutral as to probative value.

Both Victim 11 and Victim 12 describe repeated acts by Defendant. This weighs toward probative value.

While the Government states the only intervening event was time between the occasions of alleged abuse, Defendant alleges there were many intervening events, including adulthood, marriage, fatherhood, and employment as a teacher. Dkt. No. 56 at 6. The Court accepts Defendant's allegation. The intervening events weigh against probative value.

Finally, Defendant argues prior act evidence is not needed because both the alleged victims and an expert witness will testify. However, child molestation cases "require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, there is a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense." *United States v. Charley*, 189 F.3d 1251, 1260 (10th Cir. 1999) (quotation omitted). This weighs toward probative value.

Although one factor is neutral and one factor weighs against probative value, three factors clearly weigh toward probative value. Those factors—the marked similarity of the charged acts,

the repeated acts, and the compelling public interest in admitting all significant evidence in a child molestation case—outweigh the others and cumulatively weigh toward admission.

### 3. How seriously disputed the material fact is

"The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." *United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012). Here, Defendant's behavior toward the charged victims is at issue and, in the Government's words, Defendant "disputes the heart of the Government's case." Dkt. No. 50 at 15. This weighs toward admission.

### 4. Availability of less prejudicial evidence

Defendant does not challenge this factor. The Government states it is "aware of no other evidence that would satisfy Congress's intent with respect to Rule 414." Dkt. No. 50 at 15. This weighs toward admission.

The Court concludes the evidence regarding Victim 11 and Victim 12 described in the Notice has probative value favoring admission. This is not the end of the inquiry. The Court must weigh the *Enjady* factors against the unfair prejudice factors to determine if the evidence should ultimately be admitted. *Enjady*, 134 F.3d at 1433.

### C. Prejudicial Danger Analysis

#### 1. Risk of improperly based verdict

Defendant argues that the Government will improperly "assert that because [he] was alleged to have done it before then he must have done it this time," "will cause the jury to believe that [he] got away with it before," and will influence the jury to feel "a greater responsibility to convict him." Dkt. No. 56 at 7. These are not convincing. True, the Government likely will allege that because Defendant did it before, he did it again. But that is the purpose behind Rule 413/414 evidence and its unique exception to the general rule against propensity evidence. Regarding

Defendant's concerns that the jury will believe he "got away with it before" and will feel "a greater responsibility to convict him," the Court intends to give proper limiting instructions that the jury is to consider the prior act evidence only for proper purposes and is not to consider punishment during its deliberations. Because jurors are presumed to follow the Court's instructions, the Court finds that the evidence of Defendant's other actions would be unlikely to contribute to an improperly based jury verdict. *See United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive.").

### 2. Risk of distraction

Although the Court finds there is some risk that presenting victims of uncharged acts to the jury will distract the jury from considering the central issues at trial, the Court does not find that this risk is severe. Testimony regarding Rule 413/414 evidence may be narrowly tailored to reflect the similarities between Defendant's treatment of Victim 11 and Victim 12 compared to the allegations in the indictment. For the reasons previously discussed, Defendant's alleged conduct toward Victim 11 and Victim 12 is relevant to the material issue in the case, and as such, the Court is not concerned that the testimony will be unduly distracting or inflammatory to the jury. Additionally, any risk of jury distraction can be minimized by the limiting instruction and the Government efficiently presenting the Rule 413/414 testimony.

### 3. Time considerations

As discussed above, the Court believes that the strong similarities between the alleged acts may be presented efficiently and through a narrowly tailored line of questioning. Thus, the Court does not find that the Rule 413/414 evidence will be unnecessarily time consuming.

Taken together, the standard *Enjady* factors demonstrate that the probative value of the evidence described in the Notice is significant and is not substantially outweighed by any of the

dangers listed in Rule 403. However, the Court additionally considers Defendant's juvenile status at the time of the alleged prior acts.

### D. Defendant's Juvenile Status

"[T]he mere fact" that a defendant "was a minor at the time of his alleged [prior] sexual assaults" does not automatically outweigh other factors which may show probative value of the evidence. *United States v. Willis*, 826 F.3d 1265, 1274 (10th Cir. 2016).

In *Willis*, the Tenth Circuit affirmed admission of evidence related to the defendant's juvenile sexual assault because "the prior-acts evidence demonstrated a propensity that was directly relevant to the only issue for the jury to decide," "the material fact . . . was hotly disputed," the prior-acts victims were of similar ages and relationships to Defendant as the charged conduct victim, the acts were "quite similar" in multiple ways, a five-year time lapse did not negate the probative value of the prior assaults, and the defendant's juvenile status did not conclusively outweigh these factors. 826 F.3d at 1273-74. Similarly, the Ninth Circuit has affirmed admission of juvenile behavior where the prior acts were "very similar" to the charged conduct in the type of sexual acts the defendant forced on the victims as well as the ages and relationships of the victims to the defendant, the prior acts evidence "was relevant to bolster the credibility of the victims," and the "case made use of the prior acts evidence in precisely the manner Congress contemplated." *United States v. LeMay*, 260 F.3d 1018, 1028-29 (9th Cir. 2001).

In *United States v. Begay*, the District of New Mexico concluded "that [defendant] was a juvenile when he committed four of the five alleged prior acts does not alter the result [of *Benally* and *Enjady* weighing], provided that the other [R]ule 414 factors are satisfied." 497 F. Supp. 3d at 1064 (citing *LeMay*, 260 F.3d at 1030). In *United States v. LaJeunesse*, the District of Minnesota concluded the evidence "demonstrate[d] a pattern of sexual abuse" of similar victims in similar

11

ways by the defendant and a ten-year time lapse between the juvenile adjudication and charged conduct "dilute[d]" but did not outweigh its probative value.  Criminal No. 09-324, 2010 WL 3862829, at *2 (D. Minn. Sept. 28, 2010).  And in *United States v. James*, the District of Arizona ruled that the "prior [o]ffenses [were] clearly helpful and/or practically necessary," were "no more prejudicial than the charged acts" when "taken in context of the current charged sexual acts also involving minors," and "possess[ed] significant probative value."  No. CR-03-900-PHX-MHM, 2006 WL 8441111, at *6 (D. Ariz. July 12, 2006). The Court concludes that here Defendant's juvenile status dilutes but does not outweigh the significant probative value of the evidence for the same reasons described by the *Willis*, *LeMay*, *Begay*, *LaJeunesse*, and *James* courts and examined earlier in this opinion.

### III.  Res Gestae Evidence

The Notice also describes alleged sexually adjacent acts by Defendant, including that Defendant "would have female students sit on his lap, rub female students' lower backs, speak to students about their prior sexual abuse, touch female students beneath their clothing, touch female students' bra straps, show female students pornography on his cell phones, and rub the sternums of female students."  Dkt. No. 50 at 17.  The Government asserts this evidence is res gestae or intrinsic evidence.  *Id.*  Defendant does not contest the Government's assertion in his Objection. Dkt. No. 56.

The Court agrees the evidence is intrinsic.  Intrinsic evidence is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Murry*, 31 F.4th 1274, 1290-91 (10th Cir. 2022) (quotations omitted).  It takes many forms, such as evidence that:

- Is "inextricably intertwined with the charged conduct;"

12

- Occurs "within the same time frame as the activity in the conspiracy being charged;"

- Is "a necessary preliminary to the charged [crimes];"

- Provides "direct proof of the defendant's involvement with the charged crimes;"

- Is "entirely germane background information, directly connected to the factual circumstances of the crime;" or

- Is "necessary to provide the jury with background and context of the nature of the defendant's relationship to [other actors]."

*United States v. Cushing*, 10 F.4th 1055, 1075-76 (10th Cir. 2021) (citing *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015)). Here, the described conduct is contextual background occurring within the same timeframe as the allegations in the operative indictment. Both the charged conduct and the evidence described by the Government involve Defendant allegedly exploiting his position of authority as an elementary school teacher to gratify himself through inappropriate conduct with young students.

Where the Court determines evidence is intrinsic, it must conduct a Rule 403 balancing test to ensure the evidence's probative value is not substantially outweighed by the danger of unfair prejudice, cognizant that "our law favors admission of all relevant evidence not otherwise proscribed [and] exclusion under [Rule 403] is an extraordinary remedy that should be used sparingly." *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011) (emphasis removed). Rule 403 gives the Court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the probative value of the evidence is strong and the Court does not believe the dangers listed in the rule substantially outweigh it. The intrinsic evidence described in the Notice is admissible.

## CONCLUSION

IT IS THEREFORE ORDERED that the evidence described in the Government's Notice [Dkt. No. 50] is ADMISSIBLE. Defendant's Objection [Dkt. No. 56] is OVERRULED.

Dated this 12th day of February 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE